# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| DORRLIZA GUESS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:25-cv-01079 |
| | ) | Judge Aleta A. Trauger |
| WIRELESS CUSTOMER SOLUTIONS, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

In her Complaint (Doc. No. 1), plaintiff Dorrliza Guess brings claims against her former employer, defendant Wireless Customer Solutions, Inc. ("Wireless"), for discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. Now before the court is Wireless's Motion to Dismiss, for failure to state a claim for which relief may be granted. (Doc. No. 12.) For the reasons set forth herein, the defendant's Motion to Dismiss will be granted, and this case will be dismissed without prejudice. The plaintiff will be granted leave to file an Amended Complaint within 20 days.

## I. PROCEDURAL HISTORY

Guess brings claims against Wireless under Title VII for gender discrimination (Count I) (Doc. No. 1, Compl. ¶¶ 20–24) and national origin discrimination (Count II) (*id.* ¶¶ 25–29), and under the ADEA for age discrimination (Count III) (*id.* ¶¶ 30–34). Guess asks the court to enjoin the defendant from future discrimination, to reinstate her or award her front pay, and to award her damages, costs, and fees. (*Id.* at 5–6.) The defendant filed a Motion to Dismiss (Doc. No. 12), under Rule 12(b)(6) of the Federal Rules of Civil Procedure, with an accompanying Memorandum

(Doc. No. 13), to which the plaintiff filed a Response (Doc. No. 16), and in further support of which the defendant filed a Reply (Doc. No. 18).

## II.     LEGAL STANDARDS – RULE 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the complaint's legal sufficiency. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (quoting Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). But a complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a motion to dismiss for failure to state a claim, the court accepts the complaint's well-pleaded allegations as true, construes the complaint in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. *Eastep v. City of Nashville*, 156 F.4th 819, 826 (6th Cir. 2025) (citing *Courtright v. City of Battle Creek*, 839 F.3d 513, 517 (6th Cir. 2016)), *cert. denied sub nom. Eastep v. Carrick*, 146 S. Ct. 1816 (2026).

## III.    FACTS

Guess, a "female of Filipino national origin," who was at all relevant times more than 40 years old, was employed by Wireless from 2004 until her termination in July 2024. (Compl. ¶¶ 9–10, 19.) Guess worked on Wireless's Test Engineering Team in an unspecified role that required her to "[s]upport[] day-to-day operations for both local and global departments." (*Id.* ¶¶ 12–13.)

2

At some point, because her team worked in shifts, Guess "informed her manager . . . that she would need to remain available for at least the first two hours of transition to second shift," which would "ensure[] that Guess could be available to address any questions or concerns from the team during this critical transition period." (*Id.* ¶ 13.) Her manager "did not object," and, as a result, Guess's work hours "typically range[d] from 7 am to 5 pm, depending on operational needs." (*Id.* ¶¶ 13, 15.)

During the COVID-19 pandemic, Guess's team worked remotely, and Wireless "enabled her to clock in and out remotely using Kronos," which the court infers to be Wireless's electronic timekeeping application. (*Id.* ¶ 12.) After her team returned to the office, Guess's manager granted her request to work from home on Mondays and Fridays to allow her to "complete documentation without interruption." (*Id.* ¶ 14.) For an unspecified period, on some or all of the days she worked from the office, Guess would observe the following routine: she would clock in from home, her sister would drive her to work, she would "generally leave the office around 4 pm," and her sister would drive her home, where she would "continue to work . . . to ensure all tasks were completed by the end of her shift," when she would clock out. (*Id.* ¶ 15.) During her 15-minute commute to and from the office, with her sister driving, Guess "remained logged in on her laptop and wireless device to monitor team communications and review documents." (*Id.*) Thus, throughout her entire work shift, including during her commute and while at home, Guess "maintained a continuous workflow and remained available to provide support." (*Id.*)

On July 9, 2024, Guess met with two senior Wireless employees "to discuss alleged issues with her timekeeping." (*Id.*) At that meeting, Guess "explained her carpool arrangement." (*Id.*) Thereafter, one or more people accused Guess of "'time theft' and 'fraud' without conducting a fair investigation or consulting her manager." (*Id.* ¶ 18.) Guess does not allege that her manager

3

or anyone else knew about or had approved the "carpool arrangement." On July 11, 2024, two days after the meeting, Wireless terminated Guess's employment, "citing alleged 'gross misconduct' for falsifying timesheets," which Guess contends was "pretext for discrimination based on her age, gender, and national origin." (*Id.* ¶ 19.) In support of her contention that her termination was motivated by unlawful animus, Guess alleges that:

> Employees outside of Guess' protected class(es) were treated more favorably. Including but not limited to, Defendant's Product Engineering Technician 2, Jonathan Hipsher, a Caucasian male in his early 30s, who performed comparable duties under the same timekeeping protocols as Guess yet was not disciplined or terminated.

(*Id.* ¶ 16.) Guess also alleges that, at the time of her termination, she was the "only female in her department." (*Id.* ¶ 17.)

## IV.    ANALYSIS

### A.    Discrimination statutes and the relevant pleading standard

Under the ADEA, which applies to people who are "at least 40 years of age," employers may not terminate an individual "because of such individual's age." 29 U.S.C. §§ 631(a), 623(a)(1). Under Title VII, employers may not terminate an employee "because of," among other factors, the individual's sex or national origin. 42 U.S.C. § 2000e-2(a)(1). Courts generally analyze ADEA and Title VII discrimination claims "under the same framework." *Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014) (*citing Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 538 (6th Cir. 2002)), *cert. denied sub nom.*, *Kalamazoo Cnty. Rd. Comm'n v. Deleon*, 574 U.S. 1104 (2015).

A plaintiff can prevail on a discrimination claim through direct or indirect evidence. *Smith v. City of Toledo*, 13 F.4th 508, 514 (6th Cir. 2021) (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997)). At the summary judgment stage, if the plaintiff relies on indirect evidence, the court applies a three-part burden-shifting framework originally set forth in

4

*McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *Meadows v. Delta Air Lines, Inc.*, No. 25-1346, 2026 WL 242884, at *4 (6th Cir. Jan. 29, 2026) (citing *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). Under that framework, first, the plaintiff must make out a *prima facie* case of discrimination, for which he must show that he: (1) is a member of a protected class, (2) was qualified for his job, (3) suffered an adverse employment decision, and (4) "was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606–07 (6th Cir. 2019). If the plaintiff successfully shows a *prima facie* case, the burden shifts to the defendant to "demonstrate some 'legitimate, nondiscriminatory reason' for its action." *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021) (quoting *McDonnell Douglas*, 411 U.S. at 802). If the defendant produces a legitimate reason, the burden shifts to the plaintiff to show that the "proffered reason was a mere pretext for discrimination." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

As the Sixth Circuit has recently reaffirmed, the *prima facie* case "is an evidentiary standard, not a pleading requirement." *Washington v. First Nat'l Bank of Pa.*, No. 25-3673, --- F.4th ----, 2026 WL 1846730, at *3 (6th Cir. June 26, 2026) (first quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002); and then citing *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012)). So, plaintiffs are not required to plead a *prima facie* case to survive a motion to dismiss. *Id.* at *3–5; *see also Parker v. Hankook Tire Mfg. Tenn., LP*, No. 23-5208, 2023 WL 10404971, at *2 (6th Cir. Dec. 21, 2023) ("[T]he requirements for establishing a *prima face* case under *McDonnell Douglas* do not 'apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss.'" (quoting *Swierkiewicz*, 534 U.S. at 511)). Instead, the usual pleading standard applies: "to state an employment discrimination claim under Title VII . . . a complaint

5

must allege sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that the defendant discriminated against the plaintiff regarding her employment, *because of* her race, color, religion, sex, or national origin." *Washington*, 2026 WL 1846730, at *4 (citation modified) (emphasis in original) (citing *Keys*, 684 F.3d at 610).

**B.    Discussion**

The plaintiff's sole allegation in support of her discrimination claims is that Hipsher, a younger, Caucasian male coworker, "performed comparable duties under the same timekeeping protocols as Guess yet was not disciplined or terminated." (Compl. ¶ 16.)

The defendant argues for dismissal on the basis that the plaintiff has failed to plead a *prima facie* case of discrimination and that, even if she had, the plaintiff herself pleads a legitimate, nondiscriminatory basis for her termination—that she worked from her home and a car without authorization. (Doc. No. 13 at 4–10.) As the plaintiff points out (Doc. No. 16 at 3), however, and as the court has discussed, the burden-shifting framework does not apply at the pleading stage. Rather, "the ordinary rules for assessing the sufficiency of a complaint apply." *Washington*, 2026 WL 1846730, at *4 (quoting *Swierkiewicz*, 534 U.S. at 511). Nevertheless, the defendant also advances arguments that support its Motion to Dismiss. As to each claim for discrimination, the defendant argues that the plaintiff does not allege facts from which the court could reasonably infer that Guess was terminated because of one or more of her protected traits. (Doc. No. 13 at 4 (gender), 6 (national origin), 8 (age).)

The plaintiff responds that the Complaint alleges that her coworker engaged in similar behavior without discipline. (Doc. No. 16 at 8.) "No doubt disparate treatment of similarly situated people may support an inference of discrimination." *16630 Southfield Ltd. P'ship v. Flagstar Bank,*

6

*F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (citing *Keys*, 684 F.3d at 610). In support, Guess makes two related points.

First, the plaintiff argues that the Complaint "clearly states that Hipsher followed the same timekeeping protocols as Guess, supporting an inference that Guess and Hipsher engaged in substantially similar activity and yet received different treatment." (Doc. No. 16 at 8.) And, the plaintiff contends, "Guess has pled sufficient facts to meet her burden at the pleading stage with regard to a similarly-situated, non-protected employee who was treated more favorably." (*Id.*) However, the plaintiff does not substantively engage with the defendant's contention that, while the Complaint conclusorily alleges that a coworker was treated more favorably, it does not allege that the coworker "engaged in the same timekeeping violations." (Doc. No. 13 at 5 (citing Compl. ¶ 16).) While Guess alleges that her coworker maintained "the same timekeeping protocols," she does not allege that he worked from his car and home without permission. And it would be unreasonable for the court to infer as much, even construing the Complaint in the light most favorable to the plaintiff. The phrase "same timekeeping protocols" is so nonspecific as to be intentionally vague. And even if the court were to construe the Complaint to allege that Guess's coworker worked from his car and home without permission, Guess does not allege that any of his superiors knew about it, which would also explain why he was not disciplined. Indeed, for some period of time, Guess herself followed the "carpool arrangement" without discipline.

Second, in an apparent attempt to bolster the Complaint, the plaintiff contends that she "had permission to engage in each of the timekeeping practices that were later classified as 'gross misconduct.'" (Doc. No. 16 at 11.) The plaintiff uses this new fact to support her argument that her firing is likely explained by discriminatory intent. (*Id.* at 2 ("Despite having permission for her timekeeping activities, Guess was terminated.").) But the Complaint does not allege that Guess

7

had permission to clock in or out of work from home, to work from a car, or to leave the office at 4 p.m. As the defendant points out, the court cannot consider the plaintiff's new allegation in her Response. (Doc. No. 18 at 5.) It is "black-letter law that . . . a court evaluating . . . a motion to dismiss . . . must focus only on the allegations in the pleadings." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) (citations omitted). "Plaintiffs cannot . . . amend their complaint in an opposition brief or ask the court to consider new allegations . . . not contained in the complaint." *Id. at* 483–84 (citations omitted).

In support of Guess's argument that the Complaint alleges that she had permission to record time as she did, the plaintiff stretches the allegations beyond their meanings. For example, the plaintiff states that, "using the equipment provided by Defendant, Guess clocked in when she left her house and started working during her commute." (Doc. No. 16 at 2 (citing Compl. ¶ 15).) Further, Guess "had permission from her manager to continue monitoring her team during the first two hours of the transition to second shift." (*Id.* (citing Compl. ¶¶ 13, 15).) And the plaintiff asks the court to construe the Complaint's allegation that the defendant enabled employees to "clock in and out remotely using Kronos" as "indicating that clocking in and out remotely was an approved practice." (*Id.* at 9 (quoting Compl. ¶ 12).) The court cannot infer from the mere fact that the defendant provided employees with timekeeping software that could be used anywhere, or that Guess's manager approved longer hours, that Guess had permission to record time as she did.

Thus, the Complaint's allegation regarding Guess's coworker does not support her discrimination claims. In sum, therefore, the Complaint contains no facts from which the court can reasonably infer that she was terminated because of a protected trait.

## V. CONCLUSION

For the foregoing reasons, the Motion to Dismiss (Doc. No. 12) will be granted and the case will be dismissed without prejudice.

8

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge

9